## CLAUDE NEON LIGHTS, Inc., v. PHOTION INSTRUMENT CORPORATION et al.

District Court, S. D. New York. June 3, 1929.

William Bohleber, of New York City (Edwin J. Prindle, Thomas Ewing, and William Bohleber, all of New York City, of counsel), for plaintiff.

Howard F. R. Mulligan, of New York City (M. Theodore Simmons and Howard F. R. Mulligan, both of New York City, of counsel), for defendant.

THACHER, District Judge. The question of infringement depends solely upon whether the electrodes in defendant's luminescent Neon tubes are deprived of their occluded gases during the process of manufacture pursued by the defendant, which includes the aging of the tube prior to delivery for commercial use. Accepting, as indeed one must for the purposes of such a motion as this, the statements contained in the opposing affidavits which describe the defendant's process of manufacture, it is clear that no adequate means are employed to remove the occluded gases from the metal electrodes before the tubes are sealed and the aging process is begun. It is true that the electrodes are subjected to some heat during the time that the glass tubing is heated in order to drive out from the glass the occluded gases which are drawn off during the process of exhaustion, and it may perhaps be said that some gases are driven out of the electrodes by this heat. Prior to sealing the tube, the electrodes are not heated by any electric current, nor are any other means employed to deprive them of their occluded gases except the exposure to heat as indicated. After the tube is sealed, the electrodes are not subjected to any voltages other than those used in normal operation. When operated with these voltages, impurities in the Neon gas are easily detected, and the tests conducted in court clearly show that they gradually spread from the electrodes throughout the tube and are then, in the aging process, gradually absorbed until the tube takes on the characteristic coloring of pure luminescent Neon, which upon spectroscopic examination is found not to contain any of the gases originally occluded in the electrodes or the glass walls of the tubing.

There is serious dispute between the opposing experts as to the correct theoretical explanation of this phenomenon, but I think there can be no doubt that during the aging process occluded gases are withdrawn from the electrodes, because their effect can be observed as they gradually spread from the electrodes throughout the tube. Dispute arises as to how these occluded gases are entrapped during the aging process so that they no longer contaminate the pure Neon. It seems against all reason to assert that they are reabsorbed by the electrodes from which they are driven off in the early stages of the aging process. These electrodes are subjected to precisely the same forces

throughout the entire process, and it is against Nature to suppose that the same force operating under identical conditions can have opposite effects. I am therefore constrained to conclude that in the preliminary stages of the aging process occluded gases are driven off from the electrodes until under normal conditions of operation throughout the entire life of the tube no more of such gases will be driven off, and that the occluded gases of which the electrodes are thus deprived are not thereafter reabsorbed by the electrodes. It seems most reasonable to assume that these gases are thereafter entrapped by the deposit formed upon the walls of the tube in proximity to the electrodes, as the electrodes undergo vaporization in use; but whether this be true or not it is, I think, entirely clear that the electrodes themselves have been sufficiently denuded of occluded gases to continue to operate throughout the entire life of the tube, without further contaminating the pure Neon gas contained therein. This being so, the electrodes, when delivered for use, have been deprived of occluded gases within the meaning of the patent as it has been construed by the Circuit Court of Appeals in Claude Neon Lights, Inc., v. E. Machlett & Son, supra, and the motion for a preliminary injunction is accordingly granted.